(170 App. Div. 395)

GOLDSCHMIDT v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 3, 1915.)

MUNICIPAL CORPORATIONS ☞218—BOARD OF EDUCATION—APPOINTMENT OF EMPLOYÉS—CIVIL SERVICE LAW.

Civil Service Law (Consol. Laws, c. 7) § 9, declares that appointments in the classified service shall be for a probationary period, not exceeding the time fixed in the rules, while section 11 declares that the mayor of each city shall appoint and employ suitable persons to prescribe and enforce rules for the classification of offices and employments and for appointments and promotions. Rule 6, § 2, of the municipal civil service commission of the city of New York, provides that the person selected shall•be notified by the appointing officer, and upon accepting and reporting for duty shall receive a certificate of appointment for a probationary period of three months, and that, if his conduct or capacity on probation should be unsatisfactory to the appointing officer, the probationer shall be notified in writing at the end of the period he shall for that reason not be retained, and his retention in the civil service otherwise shall be equivalent to a permanent appointment. By Greater New York Charter (Laws 1901, c. 466) § 1061, the board of education is composed of 46 men serving without compensation. Section 1068, as amended by Laws 1914, c. 476, provides that the board of education shall have power to enact by-laws, rules, and regulations for the proper execution of all duties; while section 1093, as amended by Laws 1913, c. 688, provides that trials of teachers and others may be by the board of education, or by a committee of its body, which shall fix the punishment, but that a vote of a majority of all the members of the board shall be necessary to impose the penalty of dismissal. Section 1100 authorizes the board of education to investigate, through a committee, the conduct of its officers and employés. *Held* that, in view of the vast number of teachers and other employés, the board of education, having appointed an accountant through a subcommittee, may through that subcommittee notify the accountant on probation that his services are not satisfactory, and will be terminated at the end of the probationary period.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 589–598; Dec. Dig. ☞218.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Application by Hermann E. Goldschmidt for a writ of mandamus against the Board of Education of the City of New York. From an order of the Special Term (155 N. Y. Supp. 181), directing the issuance of the writ, respondent appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

Charles McIntyre, of New York City, for appellant.
Charles J. Foltz, of New York City, for respondent.

SMITH, J. The petitioner in this proceeding was appointed as a fifth grade accountant in the bureau of supplies of the department of education, and began work under that appointment on the 1st day of March, 1915. Upon the 28th day of May of that year he was notified that at a meeting of the committee on supplies of the board of education, held on that date, it was decided that his employment as an accountant, fifth grade, in the bureau of supplies, be terminated at the end of the probationary period of three months on account of his unsatisfactory service. That probationary period would have expired on the 31st day of May following. That notice was signed by A. E. Palmer, secretary of the board of education.

Thereafter, and on the 23d day of June, the board of education passed a resolution ratifying and approving of this action of the committee on supplies. The petitioner thereupon sought this writ, upon the ground that the resolution of the board of education was not passed until after his three months probationary period, and therefore that petitioner became a regular employé of the department, who could only be removed upon charges after a hearing. The Special Term has so held, and the sole question presented upon this appeal is whether the action of the committee on supplies, subsequently ratified by the board, in notifying the petitioner of the determination of his services as unsatisfactory before the expiration of the three months, was effective to terminate his connection with the department, even though not ratified until after the three months probationary period.

Section 9 of the Civil Service Law provides that:

"All appointments or employments in the classified service, except those of veterans of the Civil War, honorably discharged from the military or naval service of the United States, shall be for a probationary term not exceeding the time fixed in the rules."

Section 11 of the same law provides that:

"The mayor of each city in this state shall appoint and employ suitable persons to prescribe, amend and enforce rules for the classification of the offices, places and employments in the classified service of such city, and for employments and promotions therein and examinations therefor."

The rules of the municipal civil service commission of the city of New York provide:

"Rule VI, Section 2. The person selected shall be duly notified by the appointing officer, and upon accepting and reporting for duty, shall receive from such officer a certificate of appointment for a probationary period of three months. * * * If his conduct or capacity on probation be unsatisfactory

to the appointing officer. the probationer shall be notified in writing that at the end of such period he shall, for that reason, not be retained; his retention in the service otherwise shall be equivalent to permanent appointment."

The board of education of the city of New York is composed of 46 men, who serve without compensation. Revised Greater New York Charter (Laws 1901, c. 466) § 1061. It is apparent that this board cannot remain in continuous session and that much of its work must be left to committees. There are over 20,000 in the teaching corps alone. There are nearly 600 schools, with janitors, cleaners, and there are more than 800,000 pupils. Under these conditions, it was provided in section 1068 of the Revised Charter, as amended by chapter 476 of the Laws of 1914, that:

"The board of education shall have power, subject to the provisions of law and of this act, to enact by-laws, rules and regulations for the proper execution of all duties devolved upon the board, its member and committees, and upon the several local school boards, for the transaction of all business pertaining to the same, * * * for the proper execution of all powers vested in it by law, and for the promotion of the welfare and best interests of the public schools and the public school system of the city in the matters committed to its care."

Under section 1093, as amended by chapter 688 of the Laws of 1913, it is provided in reference to the trials of teachers and others mentioned, that: ·

"The board of education shall then immediately proceed to try and determine the case, either in the board or by a committee of its body, and shall fix the penalty or punishment, if any, to be imposed for the offense, and such penalty or punishment shall consist of a fine, suspension for a fixed time without pay, or dismissal: Provided, however, that a vote of a majority of all the members of the board of education shall be necessary to impose the penalty of dismissal. The report of any committee holding such trial shall be subject to final action by the board, which may reject, confirm or modify the conclusions of the committee, and the decision of the board shall be final, except as to matters in relation to which, under the general school laws of the state, an appeal may be taken to the state superintendent of public instruction. In case the principal or other officer * * * is acquitted, he shall be restored to his position with full pay for the period of suspension."

Section 1100 gives the board of education the authority to investigate, through a committee, the conduct of its officers and employés. That section reads:

"The board of education may investigate, of its own motion or otherwise, either in the board or by a committee of its own body, any subject of which it has cognizance or over which it has legal control, including the conduct of any of its members or employés or those of any local school board. * * * Any action or determination of a committee appointed under the provisions of this section shall be subject to approval or reversal by the board which may also modify the determination of a committee in such way as the board shall deem proper and just, and the judgment of the board thereon shall be final."

The power of the committee on supplies to investigate and determine, subject to the revisory power of the board of education, as to the quality of petitioner's work, would seem to follow from the extent of the powers vested in the board of education necessarily requiring action through committees, from the rules of the board authorizing investigations by committees, and from authority. In People ex

rel. Horvay v. Board of Education, 156 N. Y. Supp. 65, Law Journal, June 17, 1914, the relator's position was abolished by the initiatory action of the committee. He sued for reinstatement, alleging bad faith and lack of power in the board of education to act through a committee. Justice Erlanger held that there was no question as to the power of a committee which was ratified thereafter. The order in that case was reversed upon a different ground in 164 App. Div. 930, 149 N. Y. Supp. 558. In People ex rel. Kaufman v. Board of Education, 166 App. Div. 58, 151 N. Y. Supp. 585, the same question was presented, and there the court said:

"We place no weight whatever on the argument that the board had no power to act through its regular committee. In the light of the legislation, and the rules of the board pertaining to the subject, the question is too clear for argument."

It has been held in People ex rel. Kastor v. Kearny, 164 N. Y. 64, 58 N. E. 14, that the probationer is entitled to his full three months probation. It was afterwards held by this department in People ex rel. White v. Coler, 56 App. Div. 171, 67 N. Y. Supp. 652, that notice of dismissal might be given before the last day that the probationer would be dropped at the end of the period. The Kastor Case establishes the principle that a probationer is entitled to his full time of probation as far as may be possible. The appointment becomes permanent unless the probationer be notified within the three months that his work is unsatisfactory. If that notice must be given by the board itself in the many thousand positions coming within this rule, it would require the board to sit in continuous session. With the power of a committee under the by-laws to investigate, it would follow from the necessities of the case that this committee had the power to notify the probationer of the unsatisfactory condition of his work and of the termination thereof consequent thereupon, subject to the confirmatory or revisory action of the board itself. It might well be held that the power of appointment given to this committee, subject to the confirmation of the board, involved the power to do any act necessary to make that appointment complete and permanent, or to prevent the same from becoming complete and permanent, subject to the revisory or confirmatory action of the board. If so, it would follow upon reason and authority that the action of the board thereafter had become retroactive to prevent the petitioner from becoming, at the end of his probationary period, a permanent employé of the department.

In People ex rel. Curren v. Cook, 117 App. Div. 788, 102 N. Y. Supp. 1087, this precise rule seems to have been held. There the petitioner, a clerk in the department of education, was suspended without pay. He was later tried, found guilty and dismissed. He sued to recover the salary which had accrued between his suspension and his removal. The Appellate Division, Second Department, held that the later dismissal was retroactive as of the time of suspension. While, therefore, we recognize the force of the reasoning of the learned justice at Special Term in reaching his conclusion, we are of the opinion, in the light of the statutes and of the rules adopted by the board itself in pursuance of those statutes, and of the demand of

public necessity in the administration of so large a department, that the committee had full power to notify the petitioner that his work was unsatisfactory, and that his employment would end at the termination of his probationary period, and that the ratification of the conduct of the committee, although after the termination of the probationary period, was retroactive, and effective to prevent petitioner's employment from becoming permanent for lack of notice under the statute.

It follows that the order must be reversed, with $10 costs and disbursements, and the motion for a writ denied, with $50 costs. Order filed. All concur.